UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| M. BRANDON DEMARCO and LANA DEMARCO,<br><br>    Plaintiffs,<br><br>v.<br><br>MATTHEW L. CLARK and DOES 1 THROUGH 10 INCLUSIVE,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR SPOLIATION SANCTIONS AGAINST PLAINTIFFS (DOC. NO. 106)**<br><br>Case No. 2:16-cv-01242<br><br>District Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Daphne A. Oberg |

In this personal injury action, Plaintiffs M. Brandon DeMarco and Lana DeMarco ("the DeMarcos") allege Mr. DeMarco was severely injured in a 2012 motor vehicle collision caused by Defendant Matthew L. Clark. (*See* Am. Compl., Doc. No. 25.) Mr. Clark moves for spoliation sanctions against the DeMarcos, claiming they engaged in spoliation related to both vehicles involved in the collision. (Mot. for Spoliation Sanctions Against Pls. ("Mot."), Doc. No. 106.) Specifically, he contends (1) the DeMarcos failed to preserve the truck driven by Mr. DeMarco, and (2) the DeMarcos' accident reconstruction expert tampered with and removed crucial components of the truck driven by Mr. Clark. (*Id.*)

The court held a hearing on the motion on May 3, 2022. (*See* Minute Entry, Doc. No. 118.) As explained below, because Mr. Clark fails to demonstrate the DeMarcos or their expert engaged in spoliation, his motion is denied.

### BACKGROUND

This case arises from a head-on collision between trucks driven by Mr. DeMarco and Mr. Clark on November 8, 2012. (*See* Am. Compl. ¶¶ 16–19, Doc. No. 25.) Both parties were

1

driving trucks owned by their respective employers: Mr. DeMarco was driving a 2012 Chevrolet Silverado and Mr. Clark was driving a 2006 Ford F250. (Mot. 3, Doc. No. 106.) The DeMarcos allege Mr. Clark caused the collision by crossing the centerline and entering Mr. DeMarco's lane. (Am. Compl. ¶ 18, Doc. No. 25.)

Mr. DeMarco and his wife initiated this action in Utah state court on November 1, 2016, asserting claims against Mr. Clark and several entities alleged to be his employers (the "Nabors entities"). (*See* Compl., Doc. No. 2-1 at 2–8; Notice of Removal, Doc. No. 2.) The defendants removed the case to federal court in December 2016. (Notice of Removal, Doc. No. 2.) The case was then stayed for several years due to bankruptcy proceedings involving the Nabors entities. The DeMarcos eventually obtained relief from the bankruptcy stay, (*see* Doc. No. 24), and they proceeded again with this case by filing an amended complaint in February 2020, adding two other entities as defendants, (Doc. No. 25). In December 2020, the court granted motions to dismiss filed by the entity defendants, leaving Mr. Clark as the only remaining defendant.[1] (*See* Minute Order, Doc. No. 82.)

## LEGAL STANDARDS

"Spoliation is the destruction or significant alteration of evidence . . . or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273, 1309 (D. Utah 2016) (internal quotation marks omitted); *see also Mglej v. Gardner*, No. 2:13-cv-00713, 2021 U.S. Dist. LEXIS 163209, at *4 (D. Utah Aug. 27, 2021) (unpublished). Spoliation is at issue only where the offending party has a duty to preserve the evidence. *See Xyngular Corp.*, 200 F. Supp. 3d at 1309. The

---

[1] The DeMarcos have moved for leave to file a second amended complaint to reassert claims against two of the entity defendants. (Doc. No. 113.)

duty to preserve evidence arises when a litigant knows or should know litigation is imminent. *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007).

Spoliation sanctions are appropriate only when the offending party had a duty to preserve evidence and the adverse party was prejudiced by the destruction of evidence. *Xyngular Corp.*, 200 F. Supp. 3d at 1309. "When deciding whether to sanction a party for the spoliation of evidence, courts have considered a variety of factors, two of which generally carry the most weight: 1) the degree of culpability of the party who lost or destroyed the evidence, and (2) the degree of actual prejudice to the other party." *Phillip M. Adams & Assocs., L.L.C. v. Dell, Inc.*, 621 F. Supp. 2d 1173, 1192 (D. Utah 2009) (quoting *Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv.*, No. 97-5089, 1998 U.S. App. LEXIS 2739, at *13 (10th Cir. Feb. 20, 1998) (unpublished)).

## DISCUSSION

Mr. Clark claims spoliation occurred in two ways: (1) he alleges the DeMarcos failed to preserve the 2012 Chevrolet Silverado Mr. DeMarco drove during the collision, and (2) he alleges the DeMarcos' expert tampered with and removed crucial components of 2006 Ford F250 Mr. Clark drove. (Mot. 1, Doc. No. 106.) As set forth below, Mr. Clark has not demonstrated the DeMarcos engaged in spoliation in either instance.

### A. Failure to Preserve the 2012 Chevrolet Silverado

Mr. Clark first argues the DeMarcos engaged in spoliation by failing to preserve the 2012 Chevrolet Silverado Mr. DeMarco was driving during the collision. (Mot. 1, Doc. No. 106.)

The following facts are undisputed. Mr. DeMarco's employer owned the 2012 Chevrolet Silverado at the time of the collision. (*See* Mot. 3, Doc. No. 106; Opp'n 3, Doc. No. 107.) The DeMarcos never had possession or control of the Silverado after the collision. (Ex. E to Mot.,

3

Pl.'s Resp. to Interrog. No. 23, Doc. No. 106-5 at 4–5.) On December 12, 2012, a month after the collision, the DeMarcos' counsel sent a letter to the Nabors entities demanding preservation of evidence, including the Ford F250 truck driven by Mr. Clark. (Mot. 3–4, Doc. No. 106; Ex. A to Mot., Doc. No. 106-1.) In March 2013, four months after the collision, the DeMarcos' counsel contacted Mr. DeMarco's employer about the status of Silverado driven by Mr. DeMarco and learned it had been sold for parts. (Mot. 4, 6, Doc. No. 106; Ex. E to Mot., Pl.'s Resp. to Interrog. No. 23, Doc. No. 106-5 at 4–5.) Mr. Clark's counsel first requested to inspect the Silverado eight years later, in April 2021. (*See* Opp'n 5, Doc. No. 107; Ex. G to Opp'n, Doc. No. 106-7.)

Mr. Clark argues the DeMarcos had a duty to notify Mr. DeMarco's employer of the need to retain the Silverado. (Mot. 9–10, Doc. No. 106.) He contends the DeMarcos acted unreasonably by waiting until four months after the collision to contact the employer. (*Id.* at 10.) Specifically, Mr. Clark takes issue with the fact that the DeMarcos' counsel contacted the Nabors entities about preserving the Ford F250 truck one month after the collision, but only tried to preserve the Silverado after three more months had passed. (*Id.*)

In response, the DeMarcos argue no spoliation occurred because the Silverado was never in their possession or control following the collision. (Opp'n 7–9, Doc. No. 107.) They assert they had no more duty to preserve this evidence than Mr. Clark, since the Silverado was completely controlled by a third party—Mr. DeMarco's employer. (*Id.*)

Mr. Clark has not demonstrated the DeMarcos had a duty to preserve the Silverado where it was never in their possession or control following the collision. Mr. Clark relies primarily on *Jordan F. Miller Corporation v. Mid-Continent Aircraft Services, Inc.*, No. 97-5089, 1998 U.S. App. LEXIS 2739 (10th Cir. Feb. 20, 1998) (unpublished), to support his argument that a duty to

4

preserve existed in these circumstances. However, this case is distinguishable and does not support a finding that the DeMarcos engaged in spoliation here.

In *Jordan F. Miller Corporation*, the Tenth Circuit affirmed spoliation sanctions against a party who was not in possession of the evidence at issue when it was lost or destroyed. 1998 U.S. App. LEXIS 2739, at *15, 23. In that case, the purchaser of an airplane sued the sellers after the landing gear malfunctioned. *Id.* at *3–4. Before bringing suit, the plaintiff filed a claim with his insurer and authorized a repair company to take possession of the airplane and make necessary repairs. *Id.* The repair company lost or destroyed most of the damaged landing gear before the defendants had an opportunity to inspect it. (*Id.* at *6–7.) The Tenth Circuit rejected the plaintiff's argument that he had no duty to preserve the landing gear once it was in the repair company's possession because (1) the plaintiff had conceded such a duty at a hearing before the district court, and (2) the undisputed evidence established the plaintiff had authorized the repair company to take possession of his airplane and make repairs. (*Id.* at *15.) Thus, the Tenth Circuit affirmed the district court's dismissal of the plaintiff's claims as a spoliation sanction. (*Id.* at *2–3, 23.)

Unlike the plaintiff in *Jordan F. Miller Corporation*, the DeMarcos did not own the Silverado and never had possession or control of it following the collision.[2] Mr. DeMarco's employer owned the Silverado and Mr. DeMarco's employer sold it for parts. There is no evidence the DeMarcos themselves had any authority or control over what the employer did with the Silverado after the crash. Thus, *Jordan F. Miller Corporation* is distinguishable; it does not

---

[2] Additionally, unlike the plaintiff in *Jordan F. Miller Corporation*, the DeMarcos have not conceded they had a duty to preserve the Silverado.

support the proposition that the DeMarcos had a duty to preserve evidence entirely in the possession and control of a third party over which they had no authority.

The cases Mr. Clark cites from other jurisdictions are also distinguishable. In *Sylla-Sawdon v. Uniroyal Goodrich Tire Company*, 47 F.3d 277 (8th Cir. 1995), a case involving an alleged tire defect, the Eighth Circuit affirmed spoliation sanctions against a plaintiff for failure to preserve car tires even though the plaintiff did not own or have custody of the car. *Id.* at 281. But in that case, the plaintiff's attorneys inspected the car, prepared an inspection report regarding the tires, and acquired other parts of the car during the inspection—yet took no steps to acquire or preserve the tires. *Id.* at 279–80. The Eighth Circuit held the district court did not abuse its discretion in imposing spoliation sanctions where the plaintiff could have acquired the tires for a nominal sum during the inspection but failed to do so. *Id.* at 280–81. Here, by contrast, the DeMarcos did not inspect the Silverado or selectively preserve certain parts of it before it was destroyed.

In *Dillon v. Nissan Motor Company*, 986 F.2d 263 (8th Cir. 1993), the plaintiff's expert witness took possession of the car after the accident, inspected it, then sent it to a salvage yard where it was destroyed. *Id.* at 265. Further, the plaintiff's attorney was notified it had been sent to a salvage yard approximately two weeks before it was destroyed. *Id.* The Eighth Circuit affirmed spoliation sanctions based on the district court's finding that "a retained witness and counsel destroyed evidence that they knew or should have known was relevant to imminent litigation." *Id.* at 267. But here, no agent of the DeMarcos had possession of the Silverado after the collision, and there is no evidence they or their agents were involved in or had advance notice of its sale. Instead, the DeMarcos' counsel learned the Silverado had been sold for parts by a

6

third party only after requesting an inspection. *Dillon* does not support a finding of spoliation in these circumstances.

Mr. Clark presents no authority supporting his contention that the DeMarcos engaged in spoliation merely by failing to contact the employer about the Silverado sooner than four months after the collision. The cases Mr. Clark relies on are distinguishable and do not support a finding of spoliation here. Where the DeMarcos never had possession or control of the Silverado after the collision, had no authority over the third party with possession and control, and only learned it had been destroyed after attempting to arrange an inspection, the DeMarcos did not engage in spoliation.

### B. Inspection of the 2006 Ford F250

Mr. Clark next argues the DeMarcos' accident reconstruction expert, Alan Asay, altered or destroyed evidence during his inspection of the 2006 Ford F250 Mr. Clark drove during the collision. (Mot. 1, Doc. No. 106.)

Mr. Asay inspected the F250 on April 30, 2013. (Ex. A to Opp'n, Decl. of Alan Asay, P.E., M.S. ("Asay Decl.") ¶ 5, Doc. No. 107-1.) He submitted a declaration describing the inspection. (*Id.*) According to Mr. Asay, the F250 was located on the lot of a "Nabors" business, and Mr. Asay obtained permission from that entity to inspect the vehicle. (*Id.* ¶¶ 5–6.) During the inspection, Mr. Asay downloaded data from the F250's airbag control module ("ACM").[3] (*Id.*) Mr. Asay states he unscrewed and removed the ACM from under the dashboard so it could be connected to his computer. (*Id.* ¶¶ 8–9.) After downloading the data,

---

[3] Mr. Clark contends Mr. Asay was not authorized to download data from the ACM during the inspection. (*See* Mot. 6, Doc. No. 106.) Even if true, this fact is irrelevant to the spoliation analysis. Whether or not Mr. Asay was authorized to download the data has no bearing on whether evidence was destroyed or altered during the inspection.

7

he "replaced the ACM to where it was originally mounted and connected it to the vehicle so it could be downloaded again." (*Id.* ¶ 10.) He states he took sixty-nine photographs during the inspection, which show "the F250's driver seatbelt, latch plate[,] and webbing were in normal working condition," and he "did not cut or remove them." (*Id.* ¶ 11.) Mr. Asay attached photographs of the intact driver seatbelt to his declaration. (*Id.*, Doc. No. 107-1 at 5–9.) Finally, Mr. Asay states he "left the Ford F250 in the exact same condition [he] found it in when [he] entered the Nabors lot." (*Id.* ¶ 12.)

Mr. Clark's accident reconstruction expert, Jeff Anderson, inspected the F250 eight years later, on June 4, 2021. (*See* Mot. 6, Doc. No. 106.) Mr. Anderson submitted a declaration stating

> the condition of the truck was altered after the time of the crash in the following ways: the airbag control module (ACM) was accessed, electronically disconnected, and removed from the vehicle, the driver seatbelt was cut, the driver seatbelt latch plate was missing[,] and the seatbelt webbing above the cut was retracted into the driver's seat.

(Ex. F to Mot., Decl. of Jeff Anderson ("Anderson Decl.") ¶ 3, Doc. No. 106-6.) Mr. Anderson noted "[p]hotographs taken by investigating officers show that the seatbelt was intact and locked in an extended configuration at the scene of the crash after the driver was out of the vehicle." (*Id.*)

Mr. Clark has not demonstrated the DeMarcos' expert altered or destroyed any evidence during his inspection of the F250. As an initial matter, Mr. Anderson's statement that the ACM "was accessed, electronically disconnected, and removed from the vehicle" is ambiguous—it is unclear whether this refers to Mr. Asay's temporary removal of the ACM during his inspection, or whether the ACM had been permanently removed by the time Mr. Anderson inspected the

vehicle.[4] If Mr. Anderson meant the former, his declaration does not establish Mr. Asay's temporary removal of the ACM in order to download its data resulted in any destruction or alteration of evidence. Mr. Clark presented no evidence that the mere act of downloading the data somehow damaged or altered it.[5] If, instead, Mr. Anderson meant the ACM had been permanently removed by the time he inspected the F250 eight years later, there is no evidence Mr. Asay was the person responsible. Mr. Asay submitted a sworn statement that he replaced the ACM after his inspection so it could be downloaded again. (Ex. A to Opp'n, Asay Decl. ¶ 12, Doc. No. 107-1.) Mr. Anderson's declaration does not directly contradict this, but merely states the vehicle's condition was altered "after the time of the crash," without specifying when or by whom. (*See* Ex. F to Mot., Anderson Decl. ¶ 3, Doc. No. 106-6.) Mr. Clark has failed to establish Mr. Asay altered or destroyed evidence related to the ACM.

Likewise, Mr. Anderson's declaration does not establish Mr. Asay was responsible for altering the condition of the seatbelt components. Mr. Asay submitted a sworn statement that he did not cut or remove any seatbelt components, along with photographs from his inspection showing the seatbelt intact. (Ex. A to Opp'n, Asay Decl. ¶ 11, Doc. No. 107-1; *id.*, Doc. No. 107-1 at 5–9.) Mr. Anderson's statement that the seatbelt components were altered sometime between the collision and his inspection eight years later is insufficient to establish Mr. Asay was responsible for the alteration.

---

[4] Mr. Anderson analyzes ACM data from the F250 in his expert report—suggesting he either had access to the data Mr. Asay downloaded or the ACM itself. (*See* Ex. D to Mot., Anderson Report (Jan. 20, 2022) 1–2, 9, Doc. No. 106-4.)

[5] Mr. Anderson's expert report describes the ACM data as "incomplete," but he attributes this to the severity of the collision—there is no suggestion the data was altered or destroyed after the collision. (*See* Ex. D to Mot., Anderson Report (Jan. 20, 2022) 9, Doc. No. 106-4.)

Mr. Clark presents no other evidence that Mr. Asay altered or destroyed evidence during his inspection of the F250.  In light of Mr. Asay's uncontroverted testimony that he left the vehicle in the same condition as he found it, Mr. Clark has failed to demonstrate any spoliation occurred during Mr. Asay's inspection.

## CONCLUSION

Mr. Clark's motion for spoliation sanctions is DENIED.

DATED this 29th day of September, 2022.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge